**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**HAROLD J. COPEN,**

**Plaintiff,**

**v.** **Case No. 2:13-cv-00610**
**Magistrate Judge King**

**NOBLE COUNTY, *et al.*,**

**Defendants.**

**OPINION AND ORDER**

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff claims that his rights under the Fourth Amendment were violated when he was arrested without probable cause, subjected to excessive force, and maliciously prosecuted, and when his vehicle was searched by agents of the Noble County Sheriff's Office and the Caldwell Police Department. Plaintiff also asserts state law claims of assault, battery, negligence, intentional infliction of emotional distress, conversion, and trespass to chattels. *Amended Complaint*, ECF No. 23. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), on *Defendants' Motion for Summary Judgment* ("*Defendants' Motion*"), ECF No. 52. Plaintiff opposes *Defendants' Motion*, *Plaintiff Harold J. Copen's Memorandum Contra* ("*Plaintiff's Response*"), ECF No. 60, and defendants have filed a reply. *Defendants' Reply*, ECF No. 64. For the reasons that follow, *Defendants' Motion* is **GRANTED in part and DENIED in part**. Specifically, as it relates to all claims except plaintiff's claims against defendant Stokes for assault, battery, and negligence and for

excessive force under 42 U.S.C. § 1983, *Defendants' Motion* is **GRANTED**. As to those claims against defendant Stokes, *Defendants' Motion* is **DENIED**.

**I. Background**

Plaintiff Harold J. Copen had lived with Shirley Carna at her residence in Caldwell, Ohio, since the summer of 2011. *Deposition of Shirley Carna* ("*Carna Deposition*"), ECF No. 52-3, PAGEID# 200; *Amended Complaint*, PAGEID# 74. On July 6, 2012, plaintiff and Ms. Carna got into an argument over dinner; plaintiff started yelling obscenities, announced that they were finished, and began packing his things. *Carna Deposition*, PAGEID# 202; *Deposition of Harold J. Copen* ("*Copen Deposition*"), ECF No. 52-4, PAGEID# 245. Plaintiff loaded his Harley Davidson motorcycle onto a trailer attached to his automobile and began loading his clothes and collection of firearms into the vehicle. *Copen Deposition*, PAGEID# 246. Ms. Carna then drove to the Noble County Sheriff's Department, provided a written statement to defendant Brandon Stokes, a deputy sheriff, and asked "if someone would come up and talk to him." *Carna Deposition*, PAGEID# 202; *Defendants' Motion*, Exhibit A. According to defendant Stokes, Ms. Carna stated that plaintiff was threatening to return and kick in the door and that she was fearful of plaintiff while was moving out. *Deposition of Brandon Stokes* ("*Stokes Deposition*"), ECF No. 52-7, PAGEID# 302.

Ms. Carna returned to her residence that evening after dark; defendant Stokes and defendants Cory Baker and Nathan Marietta, officers with the Village of Caldwell Police Department, arrived shortly thereafter. *Carna Deposition*, PAGEID# 203. Plaintiff was still

loading firearms into his vehicle when these defendants arrived. *Copen Deposition*, PAGEID# 246. Stokes and Marietta saw plaintiff loading firearms into the passenger side of his vehicle, *Stokes Deposition*, PAGEID# 303; *Deposition of Nathan Marietta* (“*Marietta Deposition*”), ECF No. 60-14, PAGEID# 913, and Baker was aware that plaintiff had been putting firearms into his vehicle. *Deposition of Cory Baker* (“*Baker Deposition*”), ECF No. 52-9, PAGEID# 377. Plaintiff acknowledged to Stokes that he had told Ms. Carna that he would kick the door should she change the door locks. *Copen Deposition*, PAGEID# 248. Plaintiff agreed to leave and he discussed with Ms. Carna and Stokes that he would return another day to retrieve the rest of his belongings. *Carna Deposition*, PAGEID# 204; *Stokes Deposition*, PAGEID# 302; *Marietta Deposition*, PAGEID# 913; *Copen Deposition*, PAGEID# 247. According to Ms. Carna and plaintiff, Stokes, Marietta, and Baker left while plaintiff was still loading guns into his vehicle. *Carna Deposition*, PAGEID# 204; *Copen Deposition*, PAGEID# 247.

Plaintiff did not actually leave at that time. “He took the car and went around back and parked it by the alley where the neighbor’s house was being rented at the time.” *Carna Deposition*, PAGEID# 205. According to Ms. Carna, the car was parked on the neighbor’s property and no part of the car was in the alley. *Id*.[1] After parking his car, plaintiff re-entered the house with his two Shih Tzu dogs and locked himself in the den. Ms. Carna called the Noble County Sheriff’s Department. *Carna Deposition*, PAGEID# 205; *Copen Deposition*, PAGEID#

[1] Ms. Carna explained that plaintiff “was allowed to park [at the neighbor’s house] because he mows the grass and takes care of the lawn.” *Id*.

248. Stokes, Marietta, and Baker returned to Ms. Carna's house late that night. *Stokes Deposition*, PAGEID# 304; *Marietta Deposition*, PAGEID# 916. Ms. Carna let defendants into the residence and then went to a neighbor's house where she "felt safer." *Carna Deposition*, PAGEID# 205-06.

After persuading plaintiff to open the door, Stokes asked plaintiff why he had not left, as he had earlier agreed. *Stokes Deposition*, PAGEID# 305. Plaintiff emptied his pockets onto the table without being asked to do so, and Stokes asked to talk to plaintiff outside. *Copen Deposition*, PAGEID# 249; *Stokes Deposition*, PAGEID# 306; *Baker Deposition*, PAGEID# 380. Stokes testified that, once outside, plaintiff started yelling, cursing, and throwing his arms around; he refused to leave the neighbor's yard. *Stokes Deposition*, PAGEID# 306, 309. *See also Baker Deposition*, PAGEID# 380-81; *Marietta Deposition*, PAGEID# 919-20. Stokes then called Noble County Sheriff Stephen Hannum to discuss the situation, *Stokes Deposition*, PAGEID# 308, and Sheriff Hannum advised Stokes that plaintiff needed to either leave or go to jail. *Id*. According to plaintiff, Stokes then told plaintiff that he would be arrested for disorderly conduct if he did not leave. *Copen Deposition*, PAGEID# 250. *See also*, *Stokes Deposition*, PAGEID# 308. Plaintiff, carrying a dog under each arm, then went toward the passenger side of his car, where his firearms, two of which were loaded, were positioned on the back seat. *Copen Deposition*, PAGEID# 248, 250. Plaintiff describes the subsequent events as follows:

> [Stokes said,] "You're under arrest." . . . At which time he had grabbed my left arm while I was still holding the

> girls [,*i.e.*, his Shih Tzus.] All three of them had pushed me up against my car while the girls are in my arms. I believe Officer Baker was taking my right wrist and I told him, I said, "You're hurting my dogs." Stokes said to me, "I don't give a damn about your dogs. You should have left." At which time I dropped the dogs to the ground, at which time Officer Stokes put me into what they call a lateral vascular neck hold. . . . At which time I was bulldogged to the ground by all three officers. I had one with his knees in my back, one with his knees in my lower back, and Stokes continued to hold me in a chokehold on the ground.

*Copen Deposition*, PAGEID# 250-51.

Stokes testified that he advised plaintiff that he was under arrest and that he needed to set the dogs down. Plaintiff instead walked toward the passenger side of his vehicle and refused to put the dogs down. *Stokes Deposition*, PAGEID# 309-10. *See also Baker Deposition*, PAGEID# 381 ("After we tell him he's under arrest and then he just stops. He immediately turns for his car and goes directly at the passenger side of his vehicle. I remember having to run toward him, because he's running toward the vehicle after we told him he's under arrest. . . . [He] was trying to get into his car when we got there."); *Marietta Deposition*, PAGEID# 926 ("Deputy Stokes told him he was under arrest. At that time he turned around and walked straight towards the passenger's side of the vehicle."). Stokes reached "to grab [plaintiff's] left arm to place it behind his back and [plaintiff's] dog snapped at [Stokes]." *Stokes Deposition*, PAGEID# 309-10. Stokes "asked him again to drop the dogs and he did. And he went right toward Baker. [Stokes] felt that he was lunging toward Baker in an aggressive manner, so [Stokes, Marietta, and Baker] took him to the ground." *Id.* at PAGEID# 311. *See also Baker Deposition*, PAGEID# 384-85; *Marietta Deposition*, PAGEID# 930. According to Stokes,

plaintiff's forward motion "took a lot of him to the ground," and he "just grabbed [plaintiff] by the back of the shirt and went down with him." *Stokes Deposition*, PAGEID# 311. Plaintiff then put his hands under his stomach, would not let the officers pull his arms out, and kept trying to push himself up; the officers advised plaintiff to stop resisting, Stokes put his forearm in the back of plaintiff's neck, Baker put his knee behind plaintiff's shoulder blades to keep him on the ground, and Marietta attempted to pull plaintiff's arms out from underneath him. *Stokes Deposition*, PAGEID# 312; *Baker Deposition*, PAGEID# 384-85; *Marietta Deposition*, PAGEID# 936-37.

Plaintiff testified that Stokes did not tell him to put the dogs down, and denied that he pulled away from Stokes when Stokes first tried to arrest him, or turned toward Baker in an aggressive manner. *Copen Deposition*, PAGEID# 251. Plaintiff stated that he could not have resisted arrest with the three officers on him. *Id*.

After he had been handcuffed and picked up off the ground, plaintiff advised the officers that he had undergone previous neck surgeries and needed to go to the hospital. *Copen Deposition*, PAGEID# 251. Plaintiff was placed in Stokes' cruiser until an ambulance arrived. *Id*. Plaintiff was treated at the Marietta Memorial Hospital for cuts and scrapes on his head, face, and arms and was released to defendant Stokes, who then took plaintiff to jail. *Id*.

Sheriff Hannum arrived at the scene approximately 10 to 15 minutes after Stokes had left. *Carna Deposition*, PAGEID# 206. Hannum observed plaintiff's vehicle "sitting partially on the roadway and partially on the gravel." *Deposition of Stephen Seward Hannum* ("*Hannum*

*Deposition*”), ECF No. 52-6, PAGEID# 283. Hannum testified that Ms. Carna was frightened, that plaintiff’s vehicle was full of guns, and that Ms. Carna wanted the vehicle off her property. *Id*. Hannum decided to impound plaintiff’s vehicle, and he had Marietta drive the vehicle to the Sheriff’s Department. *Carna Deposition*, PAGEID# 207, 217; *Hannum Deposition*, PAGEID# 283-84; *Baker Deposition*, PAGEID# 386; *Marietta Deposition*, PAGEID# 939. The sheriff testified that he decided to impound the vehicle because Ms. Carna wanted it off her property, the vehicle was sitting partially on a public street, and the vehicle was full of ammunition and weapons “sitting unattended back in a dark alley” in “a relatively high crime area.” *Hannum Deposition*, PAGEID# 285. Noble County Deputy Sheriff Joe Miller searched the vehicle at the Noble County Sheriff’s Department for weapons and removed firearms, ammunition, and a bag containing $9,000 in cash, marijuana, jewelry, and personal items. *Deposition of Joe Miller* (“*Miller Deposition*”), ECF No. 60-15, PAGEID# 968-77; *Stokes Deposition*, PAGEID# 314.

Stokes returned to Ms. Carna’s house on July 7, 2012, and took her statement. *Carna Deposition*, PAGEID# 207. Ms. Carna obtained a protection order against plaintiff on July 9, 2012. *Id*. at PAGEID# 209. According to Ms. Carna, she was fearful for her safety after the events of July 6th. *Id*. at PAGEID# 207. She felt “intimidated” and was “very concerned about what will happen when [plaintiff is] released from jail.” *Id*. at PAGEID# 208. Stokes and Miller returned to Ms. Carna’s house later that day “[b]ecause there was a protection order and the judge ordered [them] to seize all of [plaintiff’s] guns.”

*Carna Deposition*, PAGEID# 209; *Stokes Deposition*, PAGEID# 316. Ms. Carna told the officers to search the house for more guns. *Carna Deposition*, PAGEID# 209. Ms. Carna found an antique gun on a bookcase and gave it to the officers. *Id*. Ms. Carna testified that she let Stokes and Miller search her garage, where they found and took "a lot of ammunition" and three bags that plaintiff had used to teach CCW classes. *Id*. at PAGEID# 210, 218. Stokes testified that he also took a safe at the direction of Miller and that he had to return to the house for it because there was no room in his cruiser at the time. *Stokes Deposition*, PAGEID# 316-17. Later that day, Ms. Carna found two more guns in the house, so she called Sheriff Hannum to pick them up. *Carna Deposition*, PAGEID# 211; *Hannum Deposition*, PAGEID# 286.

In an affidavit attached to *Plaintiff's Response*, Ms. Carna denied that she directed Hannum to move plaintiff's vehicle or that she told Stokes or Miller that they could take any of plaintiff's property from her house or garage. *Affidavit of Shirley Carna*, ECF No. 60-4 ("*Carna Affidavit*").

**II. Standard**

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986)). Furthermore, trial court does not bear the burden of searching the entire record to discover genuine issues of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Instead, the nonmoving party has an "affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."

**III. Discussion**

Plaintiff filed this action against Noble County, Noble County Sheriff's Office, the Village of Caldwell, the Caldwell Police Department, Hannum, Stokes, Miller, Baker, Marietta, and Brian Langley, the Caldwell Chief of Police. Plaintiff asserts claims against the individual defendants in their individual and official capacities, and seeks monetary damages. Defendants seek summary judgment on all of plaintiff's claims.

**A. Claims Against the Noble County Sheriff's Office and the Caldwell Police Department**

Defendants ask this Court to grant summary judgment in favor of the Noble County Sheriff's Office and the Caldwell Police Department on all claims because these parties "do no [sic] have the capacity to sue or be sued." *Defendants' Motion*, PAGEID# 157. Under Ohio law, the Noble County Sheriff's Office and the Caldwell Police Department are not *sui juris* and do not have the legal capacity to be sued. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014); *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Smith v. City of Columbus*, No. 2:09-cv-95, 2010 WL 3258556, at *15-16 (S.D. Ohio Aug. 17, 2010). Accordingly, there is

no genuine issue of material fact and these defendants are entitled to judgment as a matter of law. As it relates to all claims asserted against the Noble County Sheriff's Office and the Caldwell Police Department, *Defendants' Motion* is meritorious.

**B. Plaintiff's Claims against John Doe I, John Doe II, and John Doe III.**

Plaintiff's seventh claim, *i.e.,* alleging negligent hiring, training, or supervision, *Amended Complaint*, ¶¶ 62-69, and eighth claim, *i.e.,* alleging vicarious liability, *id.* at ¶¶ 71-73, are asserted against, *inter alios*, John Doe I, John Doe II, and John Doe III (collectively "John Does"), who "are, were, or may have been employed by the Noble County Sheriff's Office and/or Caldwell Police Department at the time of the incidents described herein." Defendants seek summary judgment in favor of the John Does on these claims because the plaintiff "pled insufficient facts in order to establish to what extent the aforesaid individuals may be liable." *Defendants' Motion*, PAGEID# 157. Plaintiff does not disagree with this request, explaining that he "believes he has all proper parties named in his complaint." *Plaintiff's Response*, ECF No. 60, PAGEID# 425. Under these circumstances, as it relates to defendants John Doe I, John Doe II, and John Doe III, *Defendants' Motion* is meritorious.

**C. Plaintiff's § 1983 Claims**

Plaintiff has asserted several claims under 42 U.S.C. § 1983 claiming that he was arrested without probable cause, was subjected to excessive force, andwas  maliciously prosecuted, and that his vehicle was wrongfully searched by agents of the Noble County Sheriff's Office and the Caldwell Police Department. A *prima facie* case under § 1983

requires evidence of (1) conduct by an individual acting under color of state law, and (2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Here, plaintiff alleges that defendants violated his rights under the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Defendants contend that all they are immune from liability in connection with plaintiff's federal claims based on the doctrine of qualified immunity. The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials performing discretionary functions are generally shielded from liability for monetary damages "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)(citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant

violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Since defendants "have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir.2015)).

**1. Excessive Force**

Plaintiff's third claim alleges that he was subjected to excessive force in violation of the Constitution. *Amended Complaint*, ¶¶ 44-46. This claim is governed by the Fourth Amendment and the "objective reasonableness" standard. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) ("If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard.") (citing *Graham v. Conner,* 490 U.S. 386, 395 (1989)); *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). The "objective reasonableness" standard "entails 'balanc[ing] the consequences to the individual against the government's interests in

effecting the seizure.'" *Morrison*, 583 F.3d at 401 (alteration in original) (quoting *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2002)).

"The assessment involves a fact-specific inquiry based on the totality of the circumstances that 'pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)) (internal quotations omitted). "The Court should judge the lawfulness of the conduct from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. (quoting *Kostrzewa*, 247 F.3d at 639). "The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry." *Phelps*, 286 F.3d at 299 (citing *Graham,* 490 U.S. at 397).

In analyzing the defense of qualified immunity in excessive force cases, "the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable." *Id*. (citing *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997)). The grant of "qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.,* force that was not objectively reasonable)." *Id*. "To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with

respect to whether a reasonable officer would have known such conduct was wrongful." *Id*.

**a. Defendants Baker and Marietta**

Considering the totality of the circumstances and viewing the facts in favor of the plaintiff, the Court concludes that defendants Baker and Marietta are entitled to summary judgment on the plaintiff's claim of excessive force. Plaintiff testified that he was "bulldogged to the ground by all three officers" and that all three officers had contact with plaintiff during the course of the arrest. *Copen Deposition*, PAGEID# 251. Once he was taken to the ground, "Stokes had me in a chokehold, I believe Baker was at the middle of my back, and Marietta was at the bottom," and that he was "jerked up off the ground" by all three defendants. *Id.*

Although plaintiff was arrested for disorderly conduct, a misdemeanor offense, *Stokes Deposition*, PAGEID# 310, the defendant officers were responding to a reported domestic dispute. *See Hannum Deposition,* PAGEID# 283; *Copen Deposition*, PAGEID# 249. These defendants were also aware that the plaintiff owned several firearms. *Stokes Deposition*, PAGEID# 303. Defendant Stokes observed the plaintiff loading firearms into plaintiff's vehicle prior to the incident. *Id*. After plaintiff was informed that he was under arrest, he moved directly towards the passenger door of the vehicle that contained the firearms. *See id.* at PAGEID# 309-10; *Copen Deposition*, PAGEID# 250. Furthermore, defendant Baker testified that the defendants had to run after the plaintiff and that the plaintiff was attempting to gain access to the car when the defendants reached him.

*See Baker Deposition*, PAGEID# 381. Thus, taking into account the type and amount of force used by defendants Baker and Marietta and the potentially deadly threat to the defendants posed by plaintiff's access to an automobile containing at least two firearms, defendants Baker and Marietta acted in an objectively reasonable manner. *Defendants' Motion,* as it relates to plaintiff's claim against defendants Baker and Marietta for excessive force in violation of 42 U.S.C. § 1983, is therefore meritorious.

**b. Defendant Stokes**

Plaintiff insists that there remain genuine issues of material fact as to whether defendant Stokes' actions constituted excessive force. *See Plaintiff's Response*, PAGEID# 433-34. Specifically, plaintiff alleges that defendant Stokes' use of a "lateral vascular neck restraint" constituted excessive force. *See id.*

A "lateral vascular neck restraint" is defined as:

> A method or manner of restraining or controlling a person by physically restraining the person's neck from behind. The technique involves the initial restraint of a person through contact and control methods which may ultimately be used to incapacitate the person by rendering the person temporarily unconscious where the person refuses to submit to lesser levels of control.

*Plaintiff's Response*, PAGEID# 465 (citing Noble County Sheriff Law Enforcement Policies and Procedures). Use of force falls along a continuum of five levels, and officers are directed to "use only the level of force that is reasonably necessary to stop the perceived threat." *Id*. at PAGEID# 466-67. The use of a lateral vascular neck restraint falls at the third level of the continuum:

> **Level 3—(Actively Resistant)** The suspect is perceived by the officer to be *actively resistant*. The appropriate

> response is *compliance techniques*. This is the threshold for any reasonable officer to consider this suspect to be a potential threat to himself, the officer, or other citizens. Compliance techniques may include *all reasonable* means to cause the *suspect to comply as soon as reasonably possible*. These techniques may include *use of chemical weapons*, *use of restraints*, *forced movement*, *forcing a suspect's limbs behind his back*, *forcing a suspect down on the floor or against a wall*, *Lateral Vascular Neck Restraint* (LVNR) [if the officer is trained and has demonstrated proficiency in its use] or *using other forms of rough physical force*, etc. Once suspects are perceived as actively resistant, officers should not relax care until the subject is fully secured.

*Id*. at PAGEID# 467(emphasis in original). Lesser levels of force are to be used when the suspect is perceived by the officer to be compliant (Level 1) or passively resistant (Level 2). *Id*. at PAGEID# 466.

Viewing the facts in the light most favorable to the plaintiff, it appears that defendant Stokes, who testified that he had not undergone specific training on Noble County's use of force policies, *Stokes Deposition*, PAGEID# 300-01, 314-15, placed plaintiff in the lateral vascular neck restraint after the plaintiff was on the ground and was no longer a threat to the officers by virtue of his potential access to loaded firearms. *See Copen Deposition*, PAGEID# 250-51. Thus, there remains a genuine issue of material fact as to whether defendant Stokes' actions during the course of plaintiff's arrest constituted excessive force in violation of plaintiff's Fourth Amendment rights. Moreover, there remains a genuine issue of material fact as to whether defendant Stokes acted in an objectively reasonable manner that would afford him the protection of qualified immunity. Defendant Stokes is, therefore, not entitled to qualified immunity and

*Defendants' Motion,* as it relates to the excessive force claim against defendant Stokes, is without merit.

**2. Failure to Train**

Plaintiff's seventh claim alleges that defendants Noble County and the Village of Caldwell failed to properly train its employees. *Amended Complaint*, ¶¶ 62-69. *See also id*. at ¶ 88. In order to succeed on his failure to train claims, plaintiff must establish 1) that these defendants' training programs were inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the county/village's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury. *See Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006) (citing *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir. 1992)). Moreover, "a municipality can be liable for a failure to train only when that failure reflects 'a deliberate or conscious choice.'" *Id*. (quotations omitted) (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)).

Defendant Stokes testified that Noble County's policies and procedures were provided to him on a flash drive, but that he did not read all the materials. *Stokes Deposition*, PAGEID# 300-01, 313. Defendant Stokes also testified that he does not know what a lateral vascular neck restraint is, *id*. at PAGEID# 320, and that he received no specific training outside of the police academy on the use of force. *Id*. at PAGEID# 314-15, 320. Defendant Baker, too, was also unaware of the term lateral vascular neck restraint. *Baker Deposition*, PAGEID# 386. Defendant Marietta testified that he had not received a policy manual or formal training from the Caldwell Police Department,

but that the police academy provides training on the use of force, the use of force continuum, and subject control. *Marietta Deposition*, PAGEID# 907, 933, 940.

Defendant Langley testified that the Caldwell Police Department does not provide training beyond that required by the Ohio Peace Officer Training Academy ("OPOTA"). *Langley Deposition*, ECF No. 52-8, PAGEID# 364. According to defendant Langley, OPOTA training, which must be updated periodically, includes training on the use of force and deadly force. *Id*. Defendants Stokes, Baker, and Marietta all underwent training through OPOTA. *Id*.; *Stokes Deposition*, PAGEID# 300.

Despite evidence that the Noble County Sheriff's Office and the Caldwell Police Department failed to provide separate training on the use of force, there is no evidence that defendants were deliberately indifferent to plaintiff's – or the public's – rights in this regard. *See Plaintiff's Response*, PAGEID# 443-44. Defendants Stokes, Baker, and Marietta underwent training on the use of force through OPOTA. *See Langley Deposition*, PAGEID# 364; *Stokes Deposition*, PAGEID# 300. Furthermore, defendants were required to periodically update that training. *See id.* Thus, defendants Stokes, Baker, and Marietta were in fact trained on the use of force and the fact that defendants Noble County, Hannum, the Village of Caldwell, and Langley may not have provided additional, separate, training does not amount to deliberate indifference to plaintiff's rights. *See Baker v. Union Twp., Ohio*, No. 1:12-cv-112, 2013 WL 4502736, at *21 (S.D. Ohio 2013). *Defendants' Motion* for summary judgment on plaintiff's claims of failure to train is therefore meritorious.

**3. Arrest without Probable Cause**

Plaintiff’s fourth claim alleges that he was arrested without probable cause. *Amended Complaint*, ¶¶ 48-50.

> The Fourth Amendment guarantees that government officials may not subject citizens to unreasonable searches or seizures without proper authorization. An intrusion that lacks such authorization is presumptively unreasonable, “subject only to a few specifically established and well-delineated exceptions.”

*Gardenhire v. Schubert*, 205 F.3d 303, 312-13 (6th Cir. 2000) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). “When a detention rises to the level of a full-fledged arrest,. . . the Fourth Amendment demands that the seizure be supported by probable cause.” *Id*. (citing *Dunaway v. New York,* 442 U.S. 200, 212–14 (1979)). “Probable cause requires that police have reasonably trustworthy information sufficient to warrant an officer of reasonable caution to believe the arrestee committed, or is in the process of committing, an offense.” *Gregorcic v. City of Stow*, 229 F.3d 1151 (6th Cir. 2000) (citing *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 592 (6th Cir. 1994)). “‘Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.’” *Gardenhire*, 205 F.3d at 315 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)).

The “arresting officer's ‘subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.’” *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) (quoting *Davenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Moreover, “there is no requirement ‘that the offense establishing probable cause must be closely related to, and based on the same

conduct as, the offense identified by the arresting officer at the time of arrest.'" *United States v. Abdi*, 463 F.3d 547, 559 (6th Cir. 2006) (internal quotations omitted) (quoting *Davenpeck*, 543 U.S. at 154-55).

Plaintiff was arrested for disorderly conduct. The Ohio statute that prohibits such conduct, O.R.C. § 2917.11(A), provides that:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;
>
> (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

A person who engages in disorderly conduct "in the presence of any law enforcement officer" is guilty of a misdemeanor of the fourth degree. O.R.C. § 2917.11(E).

Defendant Stokes testified that plaintiff engaged in yelling, cursing, and throwing his arms around, and he refused to leave the neighbor's yard. *Stokes Deposition*, PAGEID# 306, 309. *See also Baker Deposition*, PAGEID# 380-81; *Marietta Deposition*, PAGEID# 919-20.

Defendant Stokes called defendant Hannum, *Stokes Deposition*, PAGEID# 308, who advised defendant Stokes that, if plaintiff refused to leave, he should be arrested. *Id*. Plaintiff does not dispute or contest that he was yelling prior to his arrest. *See generally Copen Deposition*; *Plaintiff's Response*. He acknowledged that Ms. Carna had advised the officers that he had threatened her and that she had felt threatened by him. *Copen Deposition*, PAGEID# 249. Plaintiff also does not deny slamming a door in the residence. *Copen Deposition*, PAGEID# 250. Defendant Stokes advised plaintiff that he would be arrested for disorderly conduct if he refused to leave. *Id.*; *see also Stokes Deposition*, PAGEID# 308. Carrying a dog under each arm, plaintiff then approached the passenger side of his car, where his firearms, two of which were loaded, were placed on the back seat. *Copen Deposition*, PAGEID# 248, 250.

Even viewing the facts in the light most favorable to the plaintiff, defendants Stokes, Baker, and Marietta had probable cause to arrest plaintiff for disorderly conduct in violation of O.R.C. § 2917.11. These defendants had information that plaintiff had threatened to harm Ms. Carna and defendants witnessed plaintiff engaging in violent or turbulent behavior. *See* Ohio Rev. Code Ann. § 2917.11(A), (E); *see also Clay v. Freed*, No. 2:11-cv-0812, 2012 WL 5334114, at *3-4 (S.D. Ohio 2012). Under these circumstances, defendants' motion for summary judgment on plaintiff's fourth claim, *i.e.*, arrest without probable cause, is meritorious.

**4. Malicious Prosecution**

In his ninth claim, plaintiff alleges that defendants Noble County and the Village of Caldwell maliciously prosecuted him. *Amended Complaint,* ¶¶ 75-77. "The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)).

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Id*. at 308-09 (internal citations omitted; alterations in original).

"Probable cause to arrest and probable cause to prosecute are related but distinct concepts." *Apsey v. Chester Twp.*, 608 F. App'x 335, 338-39 (6th Cir. 2015) (citing *Mott v. Mayer,* 524 F. App'x 179 (6th Cir. 2013)). "While probable cause to arrest on *any* crime precludes a false arrest claim, probable cause to prosecute must be established with respect to *each* charge brought by a prosecutor to preclude a malicious prosecution claim." *Id*. (emphasis in original). "In a § 1983 action alleging malicious prosecution, the burden of

proving a lack of probable cause is on the plaintiff." *Id*. (citing *Sykes,* 625 F.3d at 309). The "requisite participation in the decision to prosecute after probable cause has ceased to exist must amount to 'aiding' the decision in more than a passive or neutral way." *Johnson,* 790 F.3d at 655 (citing *Sykes*, 625 F.3d at 309 n. 5). "[T]ruthful participation in the prosecution decision is not actionable." *Id.*

Plaintiff alleges that defendants Noble County and the Village of Caldwell "acted with malice in instituting criminal proceedings against the Plaintiff by referring Plaintiff's criminal case to the prosecution because they knew or should have known that no probable cause existed to support Plaintiff's arrest." *Amended Complaint*, ¶ 75. According to plaintiff, the first prong of the malicious prosecution analysis has been satisfied because "Noble County in fact made, influenced, or participated in the decision to prosecute the Plaintiff," and because "some of the officer Defendants actually participated in the prosecution of the Plaintiff." *Plaintiff's Response*, PAGEID# 445.

Even viewing the facts in the light most favorable to the plaintiff, the Court finds no evidence that defendants Noble County or the Village of Caldwell participated in plaintiff's prosecution in anything other than a passive or neutral manner. *See Johnson*, 790 F.3d at 655. As the Court determined *supra*, there was probable cause to arrest plaintiff. In support of this claim, plaintiff points only to the fact that the prosecutor prosecuted plaintiff and that at least two of the defendants testified at a suppression hearing during the course of that prosecution. *See Plaintiff's Response*, PAGEID# 445.

Plaintiff offers no evidence of anything other than a neutral, truthful prosecution. As it relates to plaintiff's claim for malicious prosecution, *Defendant's Motion* is meritorious.

**5. Search and Seizure of Plaintiff's Automobile**

Plaintiff's fifth claim alleges that his vehicle was the subject of an unconstitutional search and seizure by defendants Stokes, Baker, Marietta and Hannum. *Amended Complaint*, ¶¶ 53-56. As discussed *supra*, the Fourth Amendment prohibits unreasonable searches and seizures. *Maryland v. Buie,* 494 U.S. 325, 331 (1990). "Warrantless searches 'are *per se* unreasonable,' 'subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 332 (2009) (quoting *Katz,* 389 U.S. at 357). One such exception arises in connection with "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). As part of the "'community caretaking functions,' and in the interest of public safety, police officers frequently assume custody of automobiles." *Bybee v. City of Paducah*, 46 F. App'x 735, 737 (6th Cir. 2002) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)). Another exception exists in connection with inventory searches conducted in accordance with standard procedures when police impound vehicles. *See Opperman,* 428 U.S. at 369, 376. When impounding a vehicle, "[i]nventory searches undertaken pursuant to standard police procedures are reasonable." *United States v. Musick,* 291 F. App'x 706, 721 (6th Cir. 2008) (citing *Opperman*, 428 U.S. at 376).

Evidence surrounding the seizure of plaintiff's vehicle is not entirely uncontested. Defendant Hannum testified that he impounded plaintiff's automobile because the vehicle was located partially on a public street and partially on property owned by Ms. Carna, who wanted it removed from her property, and because the vehicle contained ammunition and weapons "sitting unattended back in a dark alley" in "a relatively high crime area." *Hannum Deposition*, PAGEID# 285. Ms. Carna testified that plaintiff's vehicle was legally parked on property next to hers, and was not located in the roadway. *Carna Deposition*, PAGEID# 205. *See also Affidavit of Shirley Carna*, ECF No. 60-4, ¶ 5. She also denied that she asked or directed any defendant to remove the vehicle. *Id.* at ¶ 6. She did acknowledge, however, that there were "a lot of guns in [plaintiff's] car," as well as ammunition. *Carna Deposition*, PAGEID# 206.

Plaintiff takes the position that police may not lawfully impound a vehicle under the community caretaking function when the vehicle is lawfully parked on private property. *Plaintiff's Response*, PAGEID# 440-41. However, the cases cited by plaintiff stand only for the proposition that the community caretaking function exception does not extend to the seizure of a lawfully parked vehicle (because there is no need to protect such a vehicle). *See Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005); *United States v. Squires*, 456 F.2d 967, 970 (2d Cir. 1972); *Gombert v. Lynch*, 541 F. Supp. 2d 492, 499-500 (D. Conn. 2008). The community caretaking function is not, however, limited to the protection of vehicles that are unlawfully parked or blocking traffic. *See Miranda*, 429 F.3d at 866 ("Whether an

impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.”) (citing *United States v. Jensen,* 425 F.3d 698, 706 (9th Cir. 2005)).

Here, it is undisputed that plaintiff loaded his collection of “forty-some weapons,” two of which were loaded, into the back seat of his automobile, *Copen Deposition*, PAGEID# 247-48, which was parked in “a relatively high crime area.” *Hannum Deposition*, PAGEID# 285. *See also Carna Deposition*, PAGEID# 211 (“The day of the hearing I told him I was afraid because on the corner that morning before the hearing a man had shot his wife, execution style.”). Under these circumstances, it was reasonable to impound plaintiff’s vehicle as a community caretaking function, *see Cady*, 413 U.S. at 448 (“Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not ‘unreasonable’ within the meaning of the Fourth and Fourteenth Amendments.”), and to thereafter perform an inventory search of the vehicle, notwithstanding the absence of a search warrant. *See Cooper v. State of Calif.,* 386 U.S. 58 (1967). As it relates to plaintiff’s fifth claim, *i.e.,* search and seizure of his vehicle in violation of the Fourth Amendment, *Defendants’ Motion* is meritorious.

**D. Plaintiff’s State Law Claims**

Plaintiff asserts state law claims of assault, battery, negligence, intentional infliction of emotional distress, conversion,

and trespass to chattels against the individual defendants in their individual and official capacities, and state law claims of vicarious liability, malicious prosecution, and intentional infliction of emotional distress against defendants Noble County and the Village of Caldwell. Defendants move for summary judgment on these claims and also claim entitlement to immunity on these claims by virtue of O.R.C. §§ 2744.02 and 2744.03. *See generally Defendants' Motion.*

Section 2744.02 confers on political subdivisions broad immunity from damages in civil suits for injury, death, or loss to a person or property allegedly caused by an act or omission of the political subdivision or its employee. Excepted from this broad grant of immunity are certain acts by the political subdivision or its employee. O.R.C. § 2744.02(B). Even in these latter circumstances, however, the political subdivision may nevertheless enjoy immunity based on a defense to liability recognized by O.R.C. § 2744.03.

As noted *supra,* plaintiff asserts state law claims against the individual defendants in both their official and individual capacities. When an employee of a political subdivision is sued in his official capacity, the claim is the equivalent of a claim against the political subdivision and § 2744.02 may appropriately apply. *See Freedom Banc Mortg. Servs. v. O'Harra*, No. 2:11-cv-01073, 2012 WL 3862209 at *13 (S.D. Ohio 2012). Defendants also contend that they are immune from liability on plaintiff's state law claims asserted against them in their individual capacities under O.R.C. § 2744.03. *See Defendants' Motion*, PAGEID# 185. Section 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability

unless: (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment; (2) the employee's acts or omissions were made with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed by another section of the Ohio Revised Code. O.R.C. § 2744.03(A)(6).

**1. Immunity under O.R.C. § 2744.02**

Defendants argue that defendants Hannum, Stokes, Miller, Langley, Baker, and Marietta are immune from liability under O.R.C. § 2744.02 on plaintiff's state law claims asserted against them in their official capacities. *Defendants' Motion*, PAGEID# 184. Defendants also allege that defendants Noble County and the Village of Caldwell are immune from suit by virtue of O.R.C. § 2744.02 in connection with plaintiff's state law claims of vicarious liability, malicious prosecution, and intentional infliction of emotional distress. *Defendants' Motion*, PAGEID# 183. There is no dispute that defendants Noble County and the Village of Caldwell are both qualifying "political subdivisions" under O.R.C. § 2744.02. O.R.C. § 2744.02(A); *Plaintiff's Response*, PAGEID# 452. There is also no dispute that the official capacity state law claims against defendants Hannum, Stokes, Miller, Langley, Baker, and Marietta are governed by O.R.C. § 2744. *See id.*

Plaintiff contends that the actions of defendants Hannum, Stokes, Miller, Langley, Baker, Marietta, Noble County, and the Village of Caldwell fall into the exceptions to immunity established by O.R.C. §§ 2744.02(B)(1) and 2744.02(B)(5). *Plaintiff's Response*, PAGEID# 452-53. Section 2744.02(B)(1) provides that "political subdivisions are liable

for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.” O.R.C. § 2744.02(B)(1). Section 2744.02(B)(5) provides that a political subdivision is liable for injury, death, or loss “when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code.” O.R.C. 2744.02(B)(1). According to plaintiff, O.R.C. § 311.05 expressly imposes liability on defendant Hannum as the Sheriff of Noble County. *Plaintiff’s Response*, PAGEID# 453.

The exception to immunity established by O.R.C. § 2744.02(B)(1) does not apply in this case. That sub-section of the statute applies only to injuries or damages “*caused* by the negligent operation of any motor vehicle. O.R.C. § 2744.02(B)(1) (emphasis added); *see also Doe v. Marlington Local Sch. Dist. Bd. of Educ.*, 122 Ohio St. 3d 12, 2009-Ohio-1360, 907 N.E.2d 706, at ¶ 26 (“We conclude that the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved.”). Plaintiff does not claim that defendants caused any of his alleged injuries by the negligent operation of a vehicle. *See generally Amended Complaint*; *Plaintiff’s Response*.

Plaintiff also argues that O.R.C. §§ 2744.02(B)(5) and 311.05 deprive defendant Hannum and, by extension defendant Noble County, of immunity. *See Plaintiff’s Response*, PAGEID# 453. Section 2744.02(B)(5) provides that “a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed

upon the political subdivision by a section of the Revised Code. . . ." Plaintiff argues that O.R.C. § 311.05 imposes such liability. That statute provides that an Ohio "sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." O.R.C. § 311.05. Ratification "'can be shown by inaction or silence where the principal is fully informed of all the material facts to the agent's actions,'" and the evidence of tortious wrongdoing by the deputy-agent must be established prior to imputing liability to the sheriff. *Coley v. Lucas Cnty.,* 799 F.3d 530, 543 (6th Cir. 2015) (citations omitted). Thus, this provision applies to defendant Hannum, the Sheriff of Noble County, and implicates defendants Stokes and Miller who were sheriff's deputies at the time of the incident. *See Hannum Deposition*, PAGEID# 279; *Miller Deposition*, PAGEID# 954; *Stokes Deposition*, PAGEID# 299.

Plaintiff also argues that Defendant Hannum "recklessly had Plaintiff's vehicle seized and searched," and "did have some participation with the events leading up to Plaintiff's arrest," therefore exposing defendant Noble County to liability under Ohio Revised Code §§ 2744.02 and 311.05. *Plaintiff's Response*, PAGEID# 453. For the reasons stated *supra*, however, the Court has concluded that the search and seizure of plaintiff's vehicle were not unlawful. Therefore, defendant Noble County cannot be held liable under O.R.C. § 311.05 with respect to the search and seizure of the plaintiff's car. *See Coley,* 799 F.3d at 543.

Defendant Hannum also played some role in plaintiff's arrest, stating to defendant Stokes, "Whatever you choose to do is fine, but if he's not willing to leave, then he's gonna [sic] have to go to jail." *Hannum Deposition*, PAGEID# 282-83. Therefore, defendant Hannum effectively ratified the arrest of the plaintiff. *See Coley*, 799 F.3d at 543. For the reasons stated *supra*, however, the Court has concluded that plaintiff's arrest was effected with probable cause. Therefore, defendant Hannum cannot be held liable under O.R.C. § 311.05 with respect to plaintiff's arrest. *See Coley,* 799 F.3d at 543.

It is true that there remain genuine issues of material fact in connection with plaintiff's claims arising out of defendant Stokes' use of force. However, plaintiff proffers no evidence that defendant Hannum ratified, ordered, had prior knowledge of, participated in, or acted in reckless disregard of any conduct on the part of defendant Stokes in this regard. *See* O.R.C. § 311.05. It follows, then, that Ohio law does not impose liability on defendant Noble County or defendant Hannum acting in his capacity as sheriff.

Therefore, as to plaintiff's state law claims against defendants Noble County and the Village of Caldwell, and against defendants Stokes, Miller, Langley, Baker, Hannum, and Marietta in their official capacities, defendants are entitled to summary judgment.

**2. Assault Claim**

Defendants move for summary judgment on plaintiff's first claim, *i.e.,* assault, asserted against defendants Stokes, Baker, and Marietta in their individual capacities. Specifically, defendants contend that plaintiff merely recites the elements of an assault claim under Ohio

law without specific factual allegations sufficient to create a genuine issue of material fact. *Defendants' Motion,* PAGEID# 159. Defendants also argue that there is no evidence "that the Defendants knew, with substantial certainty, that any of their actions would bring about harmful or offensive contact." *Id.*

In opposition, plaintiff points to an excerpt of his deposition testimony, arguing that "there is evidence that all three officers attempted to touch and in fact did touch the Plaintiff." *See Plaintiff's Response*, PAGEID# 427-28. In particular, plaintiff points to the physical contact between the defendant officers and plaintiff during the arrest and to his testimony that defendants Stokes, Baker, and Marietta all grabbed him and forced him to the ground during the arrest. *See id.*

Ohio law defines assault as "the willing threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Shoup v. Doyle*, 974 F.Supp.2d 1058, 1093 (S.D. Ohio 2013) (*citing Smith v. John Deere Co.*, 83 Ohio App.3d 398 (1993)). The initial threat or attempt "must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." *Id.* at 1093-94. The actor committing the assault must know with "substantial certainty that his or her act [will] bring about harmful or offensive contact." *Id.* Offensive touching is contact "which is offensive to a reasonable sense of personal dignity." *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 878 (S.D. Ohio 2003).

Here, viewing all facts in the light most favorable to the plaintiff, the Court concludes that defendants Baker and Marietta are entitled to summary judgment on plaintiff's claim of assault. These defendants' actions were not manifestly outside of the scope of their employment as law enforcement officers and there is no evidence that they acted with malicious purpose, in bad faith, or in a wanton or reckless manner. *See* O.R.C. § 2744.03(A)(6). Therefore, defendants Baker and Marietta are entitled to immunity under Ohio Revised Code § 2744.03 on this claim.

However, because the Court concludes, for the reasons stated *supra*, that the actions of defendant Stokes in implementing a lateral vascular neck restraint may have constituted excessive force in violation of plaintiff's constitutional rights, there also remains a genuine issue of material fact as to whether defendant Stokes acted manifestly outside the scope of his employment and whether, in his use of the restraint, he committed an assault under Ohio law. *See Shoup*, 974 F. Supp.2d at 1089-90. Defendant Stokes is therefore not entitled to summary judgment on plaintiff's state law claim of assault.

**3. Battery Claim**

Defendants also move for summary judgment on plaintiff's claim for battery asserted against defendants Stokes, Baker, and Marietta. *Defendants' Motion*, PAGEID# 160. Plaintiff responds that there exists a genuine issue of material fact with respect to this claim in light of plaintiff's testimony that "all three officers pushed him up against the car while Plaintiff was holding his dogs," and because

"Stokes placed Plaintiff into a lateral vascular neck hold and took him to the ground." *Plaintiff's Response*, PAGEID# 429.

Under Ohio law, "the acts of subduing and handcuffing are acts of intentional contact which, unless privileged, constitute a battery." *Burr v. Burns*, 439 F.Supp.2d 779, 790 (S.D. Ohio 2006) (citing *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99 (Ohio 1988)). It is undisputed that the defendants knew that plaintiff had firearms in his car and was approaching that car when he was arrested by the defendants. *Stokes Deposition*, PAGEID# 303, 309-10; *Copen Deposition*, PAGEID# 250. As the Court concluded in its consideration of plaintiff's assault claim, plaintiff has not offered evidence that defendants Baker and Marietta may not properly claim immunity under O.R.C. § 2744.03 in connection with plaintiff's battery claim. What remains in dispute, however, is whether defendant Stokes' alleged use of a lateral vascular neck restraint was excessive, manifestly outside the scope of his employment, and sufficient to deprive this defendant of immunity. As to plaintiff's battery claim against defendant Stokes, *Defendants' Motion* is without merit.

**4. Negligence Claim**

Defendants move for summary judgment on plaintiff's claim of negligence asserted against defendants Hannum, Stokes, Miller, Baker, and Marietta. *See Defendants' Motion*, PAGEID# 168. In his response to defendants' motion for summary judgment, plaintiff clarifies that the claim is based on defendants' duty not to use excessive force against him and defendants' alleged breach of that duty. *Plaintiff's Response*, PAGEID# 443. Plaintiff's negligence claim therefore follows the

excessive force analysis. *See Williams v. Sandel*, 433 F. App'x 353, 363-64 (6th Cir. 2011).

As discussed *supra*, defendants Hannum, Miller, Baker, and Marietta are entitled to summary judgment on plaintiff's excessive force claim and are also therefore entitled to summary judgment on plaintiff's negligence claim. For the reasons state *supra*, however, there remains a genuine issue of material fact regarding defendant Stokes' alleged use of a lateral vascular neck restraint and his alleged breach of the duty to not use excessive force against the plaintiff. *See Williams*, 433 F. App'x at 363-64. Therefore, defendants Hannum, Miller, Baker, and Marietta are entitled to summary judgment on plaintiff's negligence claim. As it relates to plaintiff's negligence claim against defendant Stokes, however, *Defendants' Motion* is without merit.

**5. Intentional Infliction of Emotional Distress Claim**

In his tenth claim, plaintiff alleges that "Defendants' conduct was extreme and outrageous by instituting criminal proceedings despite the lack of probable cause to arrest and charge him with the alleged crimes." *Amended Complaint*, ¶ 80. The *Amended Complaint* further alleges that plaintiff suffered severe emotional distress "as a result of his arrest and criminal proceedings." *Id*. at ¶ 81. Plaintiff states that a "genuine issue of material fact exist[s] as to whether the Defendants recklessly caused Plaintiff serious emotional distress and whether their conduct that later afternoon was extreme." *Plaintiff's Response*, PAGEID# 448.

In order to establish a claim for intentional infliction of

emotional distress under Ohio law, a plaintiff must prove that

> (1) defendants either intended to cause emotional distress, or knew or should have known that their conduct would result in serious emotional distress to plaintiff; (2) defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) defendants' conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff suffered serious emotional distress, such that no reasonable person could be expected to endure it.

*Bragg v. Madison*, 20 F. App'x 278, 285-86 (6th Cir. 2001) (citing *Roe v. Franklin Cnty.*, 673 N.E.2d 172, 180 (Ohio Ct. App. 1996)). *See also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1132 (Ohio Ct. App. 1991)).

Plaintiff testified that, after reading the officers' statements that he received during discovery, he suffered a breakdown and sought mental health treatment. *Copen Deposition*, PAGEID# 256. However, plaintiff offers no evidence tending to establish that defendants intended to cause him emotional distress, knew that their conduct would cause him emotional distress, or should have known their conduct would result in serious emotional distress. *See Bragg*, 20 F. App'x at 285-86. Moreover, plaintiff offers no evidence even suggesting that defendants' conduct "was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community." *Id.*; *see generally Amended Complaint; Plaintiff's Response*.

As it relates to plaintiff's claim of intentional infliction of emotional distress, *Defendants' Motion* is meritorious.

**6. Conversion Claim**

Plaintiff asserts a claim of conversion against defendants Stokes and Miller. Specifically, plaintiff alleges that these defendants searched Ms. Carna's home on July 9, 2012,

> and took several items of personal property belonging to the Plaintiff without his permission[,] . . . including (but was not limited to) the following: $500.00 in U.S. currency, two revolvers worth approximately $600.00, one holographic weapon sight valued at approximately $500.00, one lasermax LMS1131P for a Glock 23 valued at approximately $350.00, one Blackhawk Storm Single Point Sling at approximately $30.00, two Ruger mini 14 magazines at approximately $100.00, one Winchester USA worth approximately $550.00, 2 Glock 23 magazines at $25.00 a piece, one Bushnell binocular set worth approximately $130.00, and one Nikon Laser 440 Rangefielder, valued at $219.00 and ammunition for firearms.

*Amended Complaint*, ¶ 93.

"Under Ohio law, conversion is 'the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *McCaughey v. Garlyn Shelton, Inc.*, 208 F. App'x 427, 435 (6th Cir. 2006) (quoting *Joyce v. Gen. Motors Corp.,* 551 N.E.2d 172, 175 (Ohio 1990)). "'In order to prove the conversion of the property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner.'" *Pointe at Gateway Condo. Owner's Assn., Inc. v. Schmelzer*, Nos. 98761, 99130, 2013 WL 4510576, at *11 (Ohio Ct. App. 2013) (quoting *Brumm v. McDonald & Co. Sec., Inc.*, 603 N.E.2d 1141 (Ohio Ct. App. 1992)).

Defendants contends that, because Shirley Carna gave permission to search her residence and to take plaintiff's guns and ammunition, the seizure of plaintiff's property was not wrongful. *Defendants' Motion*, PAGEID# 177. Plaintiff responds only that, because Ms. Carna avers in her affidavit that "she never gave any officer permission to take any of the Plaintiff's property," there exists a genuine issue of material fact as to this claim and summary judgment on the claim in unwarranted. *Plaintiff's Response*, PAGEID# 449.

There is a discrepancy between the deposition testimony of Shirley Carna and her later filed affidavit. *See Plaintiff's Response*, PAGEID# 448-49; *Defendants' Reply*, PAGEID# 1275. On deposition, Ms. Carna testified that she gave the defendants permission to search the residence and garage for firearms; she gave an antique gun to the officers and later asked Hannum to take more handguns found by her. *Carna Deposition*, PAGEID# 209-11. In her affidavit, however, Ms. Carna states that she never told the defendants to take any of plaintiff's belongings. *Carna Affidavit*, ¶¶ 8-9. In response to *Defendants' Motion* in connection with this claim, plaintiff contends only that Ms. Carna's affidavit establishes a genuine issue of material fact with respect to the claim of conversion against defendants Stokes and Miller. *See Plaintiff's Response*, PAGEID# 449.

However, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition)." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907-08 (6th Cir.

2006) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Furthermore, the United States Court of Appeals for the Sixth Circuit applied this principle to all post-deposition affidavits, stating:

> [a]s we interpret . . . relevant authorities, then, a district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. *See Albertson*, 749 F.2d at 1104 (employing the "directly contradicts" language). A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.

*Aerel, S.R.L.*, 448 F.3d at 908.

Plaintiff has offered no justification for the discrepancy between Ms. Carna's post-deposition affidavit and her deposition. *See Plaintiff's Response*, PAGEID# 448-49. Furthermore, plaintiff has neither alleged nor offered evidence that he demanded the return of any of the allegedly converted property. *See Amended Complaint*, ¶¶ 92-95; *Plaintiff's Response*, PAGEID# 448-49. Under these circumstances, the Court finds no genuine issue of material fact regarding the conversion claim. Defendants are entitled to summary judgment on this claim.

**7. Trespass to Chattels Claim**

Plaintiff alleges that defendants Baker, Marietta, Hannum, and Miller are liable on a state law claim of trespass to chattels for impounding and searching plaintiff's automobile and the attached trailer, motorcycle and cellular telephone. *Amended Complaint*, ¶¶ 97-98. "A trespass to chattel occurs when one intentionally dispossesses another of their personal property." *Schmelzer*, 2013 WL 4510576 at

*11 (citing *Conley v. Caudill,* No. 02CA69775, 2003 WL 21278885 (Ohio Ct. App. 2003)). "'An unprivileged use or other intermeddling with a chattel which results in actual impairment of its physical condition, quality or value to the possessor makes the actor liable for the loss thus caused.'" *CompuServe, Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) (citing Restatement (Second) of Torts § 218 cmt. h (1965)).

Plaintiff insists that defendants "unlawfully impounded and searched his vehicle, depriving Plaintiff of his vehicle for a substantial period of time." *Plaintiff's Response*, PAGEID# 449. However, as discussed *supra*, the community caretaking exception to the Fourth Amendment's prohibition against unreasonable searches and seizures applies to the facts of this case; the seizure of plaintiff's vehicle (and attached items) was therefore lawful. It follows, then, that defendants are entitled to summary judgment on the trespass to chattels claim.

**8. Punitive Damages**

Plaintiff's eleventh claim is a separate claim for punitive damages. *Amended Complaint*, ¶¶ 85-90. Punitive damages are, however, a remedy and not a separate substantive cause of action, and should not be pleaded as such. *See Shoup,* 974 F.Supp.2d at 1086-87. Accordingly, to the extent that *Defendants' Motion* addresses plaintiff's separate claim for punitive damages, the motion is meritorious. However, plaintiff properly pleaded punitive damages as a remedy in the prayer for relief, see Amended Complaint, PAGEID# 86, and that remedy remains at issue in the case.

**IV. Conclusion**

**WHEREUPON**, *Defendants' Motion for Summary Judgment*, ECF No. 52, is **GRANTED in part and DENIED in part**. Specifically, as it relates to all claims except plaintiff's claims against defendant Stokes for assault, battery, and negligence in his individual capacity and against defendant Stokes for excessive force under 42 U.S.C. § 1983, the motion is **GRANTED**. As to those claims against defendant Stokes, *Defendants' Motion for Summary Judgment*, ECF No. 52, is **DENIED**.

*s/Norah McCann King*

February 19, 2016

Norah McCann King
United States Magistrate Judge